No.13-cr-_____

UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

FEDA KURAN

INFORMATION
Counts

18 U.S.C. § 1347 (health care fraud - 1 count)
42 U.S.C. § 1320a-7b (Anti-Kickback Statute - 1 count)
18 U.S.C. § 2 (aiding and abetting)

A true bill.

---------------------------------------------
Foreman

Filed in open court this _____ day,

of _____ A.D. 20 _____

---------------------------------------------
Clerk

Bail, $ _____

---------------------------------------------

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 13-_____ |
| v. | : | DATE FILED: _____ |
| FEDA KURAN | : | VIOLATIONS:<br>18 U.S.C. § 1347 (health care fraud |
| | : | - 1 count);<br>42 U.S.C. § 1320a-7b |
| | : | (Anti-Kickback Statute<br>–1 Count); |
| | : | 18 U.S.C. § 2 (aiding and abetting); and |
| | : | Notice of Forfeiture. |

## INFORMATION

### COUNT ONE

(Health Care Fraud)

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this Information:

#### INTRODUCTION

**The Defendant and Her Ambulance Business**

1. BROTHERLY LOVE AMBULANCE, INC. ("BROTHERLY LOVE") was incorporated in the Commonwealth of Pennsylvania on December 18, 2009, with an initial corporate address of 123 West Thompson Street, Philadelphia PA 19122. BROTHERLY LOVE applied to participate in the Medicare Program in July 2011, with an initial physical address of 9413 Bustleton Ave, Philadelphia, PA 19115. Starting in or about March 2011, BROTHERLY LOVE primarily operated out of 2200 Michener St., Suite 22, Philadelphia, PA 19115.

1

2. BROTHERLY LOVE operated four different ambulances and a minivan.

3. BROTHERLY LOVE was owned by it president, defendant FEDA KURAN, and a co-schemer (the "co-shemer"), known to the United States Attorney. Defendant FEDA KURAN was primarily responsible for the daily activities of BROTHERLY LOVE and oversaw its work and billing activity. The co-schemer was primarily responsible for financing BROTHERLY LOVE, but the co-schemer's name did not appear on the BROTHERLY LOVE certificate of incorporation or Medicare Enrollment application forms. At all times relevant to the Information, defendant FEDA KURAN was responsible for personnel matters, including hiring and firing of employees, managing the fleet of ambulances, selling and acquiring equipment, and, at times, transporting patients by ambulance. In addition, any supervisors hired by BROTHERLY LOVE reported to defendant FEDA KURAN.

4. As further described below, BROTHERLY LOVE began operating on or about July 1, 2010. BROTHERLY LOVE received a business privilege license in May 2010, a Certificate of Licensure from the Pennsylvania Department of Health in July 2010, became a Medicare approved provider effective as of July 1, 2010, and continued operations as directed by defendant FEDA KURAN, at all times relevant to the Information.

### The Federal Medicare Program as Administered by the State of Pennsylvania

5.  Medicare was a federal health insurance program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services. Medicare helped to pay for reasonable and medically necessary medical services for people aged 65 and older and some persons under 65 who are blind or disabled. Medicare was divided into several parts, including Part B, outpatient services.

6.  Under Medicare Part B, payment was made to providers of outpatient services. Such providers included medical transportation providers. Medicare beneficiaries paid a monthly premium for Medicare Part B.

7.  CMS contracted with private insurance companies under Part B to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers and suppliers. Once contracted to process Medicare Part B claims, these private insurance companies were known as Medicare Administrative Contractors ("MAC"). CMS contracted with Highmark to be the MAC to process and pay Medicare Part B claims in the Commonwealth of Pennsylvania.

8.  The MAC, Highmark, was required to process applications from medical providers seeking to enroll in the Medicare program. Once the application was reviewed and approved, a provider was enrolled and issued a unique provider number. The provider number was required on all claims submitted by the provider to the carrier for payment. BROTHERLY LOVE had a provider number and its initial enrollment application to Medicare was signed on July 19, 2010, by defendant FEDA KURAN, acting as the authorized agent for BROTHERLY LOVE.

9. Upon enrollment, providers were issued a provider manual that generally describes the requirements to participate as a provider in the Medicare program. Providers also periodically received newsletters advising them of additional requirements for participation and instructions concerning which services are covered or not covered by Medicare and the prerequisites for coverage.

### Payment for Medicare Claims to Providers

10. All providers and suppliers of Medicare Part B services were required to submit, within one year from the date of service, claims to the MACs on behalf of Medicare beneficiaries. During this period, providers could file their Medicare Part B claims either electronically or in paper form.

11. Providers were required to certify that (1) the services provided were medically necessary, (2) the services were personally provided by the person signing the form, or by one of his/her employees acting under the signer's direction, and (3) the information contained in the form was true, accurate, and complete. The provider number was included as a part of each submission.

12. Medicare paid for regularly scheduled, non-emergency transports to certain locations, including dialysis centers, only if either: (a) the beneficiary was bed-confined and it was documented that the beneficiary's condition was such that other methods of transportation were contraindicated (i.e., bed confinement alone was not itself a sufficient basis for such transportation); or (b) the beneficiary's medical condition, regardless of bed confinement, was such that transportation by ambulance was medically required. For a beneficiary to be bed-confined, the following criteria were required to be met: (1) the beneficiary was unable to get

up from bed without assistance; (2) the beneficiary was unable to "ambulate," and (3) the beneficiary was unable to sit in a chair or wheelchair.

13. In all cases, CMS required that the appropriate documentation be kept on file and, upon request, presented to the carrier. For example, Medicare required ambulance providers to obtain a physician's written order certifying the need for an ambulance for scheduled non-emergency transports. A physician's order was referred to as a Physician Medical Necessity Certification ("PMNC"), Certificate of Medical Necessity ("CMN"), or Physician Certification Statement ("PCS"). CMS made clear that neither the presence nor absence of a signed physician's order for an ambulance transport proved (or disproved) whether the transport was medically necessary. The ambulance service had to meet all program coverage criteria in order for payment to be made, including the medical necessity requirement.

14. BROTHERLY LOVE submitted its claims electronically, via computer, to Highmark for reimbursement by Medicare. BROTHERLY LOVE received its Medicare reimbursement by electronic funds transfer to an account at Citizen's Bank in the name of Brotherly Love, the authorized signatory for which was Defendant FEDA KURAN at all times relevant to this Information. The co-schemer was also an authorized signatory on the account from on or about August 11, 2010, until on or about July 20, 2011.

## THE SCHEME TO DEFRAUD

15. Beginning as early as in or about July 2010 and continuing through in or about October 2011, defendant FEDA KURAN and others known to the United States Attorney took the following actions, and directed other BROTHERLY LOVE employees to take the following actions:

a) transport by ambulance patients who could walk or be transported by para-transit van,

b) transport patients in personally owned vehicles and bill for that transportation as if the patient had been transported by ambulance,

c) use patient information to bill for patients as if they had been transported by ambulance when the patients had actually transported themselves to dialysis, and

d) pay patients to be transported by BROTHERLY LOVE and receive payments to refer patients to other ambulance companies to be transported by those companies.

The majority of these patients were dialysis patients, who needed to attend dialysis treatments three times per week, thereby allowing BROTHERLY LOVE to bill extensively for these patients.

16. Defendant FEDA KURAN, and BROTHERLY LOVE employees acting at the direction of defendant FEDA KURAN, submitted or caused to be submitted fraudulent claims to Medicare for medically unnecessary ambulance services, services that were not provided, or services that would not have been permitted because they were induced by illegal remuneration.

17. As a result of this scheme, Medicare incurred a loss for these particular patients of approximately $2,015,712.52.

18.     Between in or about July 2010 and in or about October 2011, in the Eastern District of Pennsylvania, defendant

## FEDA KURAN

knowingly and willfully executed, and attempted to execute, and aided and abetted the execution of, a scheme and artifice to defraud a health care benefit program, and obtained by means of false and fraudulent pretenses, representations, and promises, the money, property or services owned by, and under the custody or control of, a health care benefit program, that is, Medicare, in connection with the delivery of and payment for health care benefits, items or services.

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT TWO

### (The Anti-Kickback Statute)

1. Paragraphs 1 through 17 of Count 1 are incorporated here.

2. Between in or about July 2010 and in or about October 2011, in the Eastern District of Pennsylvania, defendant

### FEDA KURAN

knowingly and willfully offered and paid remuneration and aided and abetted others in the offering and paying of remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to induce such persons to refer individuals to BROTHERLY LOVE for ambulance transport, and to induce others to purchase, order, and arrange transportation of patients by ambulance by BROTHERLY LOVE, when payment for such items or services may be made in whole and in part under a Federal health care program.

In violation of Title 42, United States Code, Section 1320a-7b(b)(2) and Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

1. As a result of the violation of Title 18, United States Code, Section 1347, set forth in this indictment, defendant

### FEDA KURAN

shall forfeit to the United States of America any property that constitutes or is derived from gross proceeds traceable to the commission of such offense(s), including, but not limited to, the sum of approximately $ 2,015,712.52 paid for false claims, and any other accounts and proceeds of these offenses.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court; or

    (d) has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

ZANE DAVID MEMEGER
United States Attorney

9